**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JOSEPH MICHAEL SCHNEIDER,**

    **Plaintiff,**

v.                                         **CASE NO. 6:09-cv-1089-Orl-35GJK**

**SHERIFF JACK PARKER,** *et al.***,**

    **Defendants.**

## ORDER

Plaintiff initiated this action pursuant to 42 U.S.C. § 1983 (Doc. No. 1). This case is before the Court on Defendants Rodgers and Nunez's Motion to Dismiss the Second Amended Complaint (Doc. No. 29). Plaintiff has filed a response in opposition (Doc. No. 41).

### *I. Background*

Plaintiff, a prisoner of the State of Florida proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 against Defendants Sheriff Jack Parker, Tammie Rodgers, LPN, and Juan Nunez, M.D. (Doc. No. 13).[1] Plaintiff alleges that on September 4, 2007, he was arrested and taken to the Brevard County Jail ("Jail"), where he was made to sleep on a mattress on the floor of a day room for almost one week due to overcrowding. *Id.* at 11. Furthermore, Plaintiff notes that from September 4, 2007, through October 6, 2007,

---

[1] Plaintiff's complaint names "Jammie Rogers" as a Defendant; however, the correct name of the Defendant is Tammie Rodgers. Furthermore, the Court notes that Defendant Parker is not a party to the motion to dismiss. Defendant Parker has filed an answer and affirmative defenses to Plaintiff's Second Amended Complaint (Doc. No. 38).

inmates were forced to eat their meals on the floor of their bunks as there was not enough seating. *Id.* at 14. After his release, Plaintiff was arrested again and detained at the Jail from December 19, 2007, through October 19, 2008, and the conditions of the Jail had not improved. *Id.*

Plaintiff also alleges that from September 17, 2007, through September 19, 2007, he was denied medical care for his staphylococcus aureus infection, more commonly known as a staph infection. *Id.* On September 17, 2007, Plaintiff informed correctional officers that he had an infection in his left knee and needed medical attention. *Id.* at 12. Correctional officers informed Plaintiff that he could see the medical staff when they came to his pod, and thus, there was nothing they could do until that time. *Id.* After seeing the medical staff that evening, Plaintiff was told that he most likely had a staph infection but that he had to go to sick call in the morning to receive medication. *Id.* On the morning of September 18, 2007, Plaintiff went to sick call, was given a form, and began completing it as directed. *Id.* However, the medical staff left before Plaintiff could complete the form. *Id.* Plaintiff attempted to submit the form to the medical staff, who had transferred to the pod next door, and the medical staff refused to accept his form. *Id.* That evening Plaintiff was again denied medical care and was told that sick call forms could only be given to medical staff in the morning. *Id.*

Plaintiff alleges that he experienced pain and inflammation due to the medical staff's refusal to treat his infection. *Id.* Moreover, Plaintiff notes that he lost sleep on the night of September 18, 2007, due to the pain in his knee. *Id*. at 12-13. On September 19, 2007, Plaintiff turned in his sick call form to medical staff. *Id.* at 13. The medical staff refused

to treat Plaintiff, stating that he had to first be interviewed, which would occur later in the day due to the overcrowding in the Jail. *Id.* Later in the day Plaintiff experienced "cold sweats" due to the extreme pain he was experiencing. *Id.* Additionally, the other inmates "became excited due to the contagiousness of his infection" and demanded that he be removed from the dorm or pod. *Id.* Plaintiff fainted in the presence of a correctional officer and was then taken to the infirmary, where he was treated for his infection. *Id.*

While being treated for his infection, Defendant Rodgers advised Plaintiff that staph "was rampant throughout the jail." *Id.* at 16. Defendant Rodgers also advised Plaintiff that if he wanted to avoid this infection then he should not have come to jail. *Id.* at 14. Plaintiff suffered physical and emotional injuries due to Defendants' deliberate indifference to his medical needs. *Id.* Plaintiff notes that he has a permanent scar on his knee. *Id.* When Plaintiff was reincarcerated at the Jail from December 2007 through October 2008, he contracted several more staph infections. *Id.* at 15. Finally, Plaintiff contends that from December 19, 2007, through October 19, 2008, Defendant Nunez denied him medication for the swelling from his infection and denied antibacterial soap to keep his infections clean. *Id.* at 18.

Plaintiff also states that during this time period, Defendants knowingly and with deliberate indifference placed infected inmates into the pods, which led to the spread of the staph infection. *Id.* at 16. Plaintiff further states that correctional officers failed to maintain a clean and healthy environment, which also led to the spread of the infection. *Id.* at 17.

## II.  Standard of Review

When considering a motion to dismiss pursuant to Rule 12(b)(6), the complaint is

3

construed in the light most favorable to the plaintiff and its allegations are taken as true. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Development Corporation S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983). A complaint must contain a short and plain statement demonstrating an entitlement to relief, and the statement must "give the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346 (2005)).

In order to survive a motion to dismiss, a complaint "does not need detailed factual allegations," but must plead "enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570; *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009); *Randall v. Scott*, 610 F.3d 701, 708 (11th Cir. 2010). Thus, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id*.

Dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the factual allegations of the plaintiff's complaint, there remains a dispositive legal issue which precludes relief. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *Brown v. Crawford County, Ga.*, 960 F.2d 1002, 1009-10 (11th Cir. 1992). Moreover, in the case of a *pro se* action, the Court should construe the complaint more liberally than it would pleadings drafted by

lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).

### III. Discussion

Defendants Rodgers and Nunez move to dismiss Plaintiff's complaint because Plaintiff has failed to state a viable claim for deliberate indifference to medical care against them (Doc. No. 29 at 2-5).[2] Defendants acknowledge the following as comprising the content of Plaintiff's allegations in this regard: Plaintiff alleges that he attempted to receive medical care for a staph infection from September 17, 2007, through September 19, 2007, while at the Brevard County Jail but was denied prompt medical treatment on numerous occasions. Furthermore, Plaintiff states that when he was arrested and returned to the Jail in December 2007, he contracted several other staph infections. Plaintiff complains that Defendant Nunez failed to provide necessary medication and antibacterial soap to help heal the infection and prevent further infection. Moreover, Plaintiff argues that Defendants Rodgers and Nunez knowingly placed inmates who had staph infections in the dorms or pods in the Jail, which led to the spread of the staph infection.

The United States Supreme Court set forth the standard for prison medical care in *Estelle v. Gamble*, 429 U.S. 97, 104 (1976): "deliberate indifference to [the] serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . .

---

[2]Defendants also contend that Plaintiff has not fully exhausted his claims. However, Plaintiff alleges that while at the Brevard County Jail he was unaware of a grievance procedure because he never received an inmate handbook or any information regarding the grievance process (Doc. No. 41 at 5-6). Plaintiff notes that after he was released from the Jail he sent a handwritten grievance to Commander Jeter. *Id.* at 7. The Court finds that Plaintiff has satisfied the exhaustion requirement of 42 U.S.C. § 1997e(e). *See Goebert v. Lee County*, 510 F.3d 1312, 1322-23 (11th Cir. 2007) (finding the correctional facility's administrative grievance procedure was not "available" within the meaning of the PLRA when an inmate had no way of knowing about the grievance procedure and was not rendered "available" by the inmate's untimely discovery of the procedure).

proscribed by the Eighth Amendment."³  As recognized by the Eleventh Circuit Court of Appeals, to demonstrate deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry.  *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).  "First, a plaintiff must set forth evidence of an objectively serious medical need.  Second, a plaintiff must prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Id*. (citations omitted).  The Eleventh Circuit has described a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (quotation marks and citations omitted), *overruled on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008); *Farrow*, 320 F.3d at 1243.  "In the alternative, a serious medical need is determinated by whether a delay in treating the need worsens the condition." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009).

The Court finds that under this standard, accepting Plaintiffs allegation to be true, Plaintiff has alleged that at some point he suffered from a sufficiently serious medical need. By his allegations, Plaintiff was unable to communicate his alleged symptoms to Defendants until the morning of September 19, 2007, albeit due to allegedly unnecessary

---

³ Between September 2007, and October 2008, Petitioner was a pre-trial detainee, therefore his claims must be analyzed under the Fourteenth Amendment rather than the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  However, "in regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the [E]ighth [A]mendment for convicted persons."  *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985).

procedural requirements.  Thus, there was no diagnosis of an obviously serious medical condition on September 17 and 18, 2007.  However, his condition became obvious when Plaintiff exhibited severe symptoms such as cold sweats and fainting. *See Bruner v. Wasco State Prison*, Case No. 1:07-cv-1531-LJO-SMS, 2009 WL 161085, at *2 (E.D. Cal. Jan. 22, 2009) (finding Plaintiff's allegations that he suffered from a staph infection that required daily care established the existence of a serious medical need), *but see Stokes v. Goord*, Case No. 9:03-cv-1402, 2007 WL 995624, at *3 (N.D. N.Y. Mar. 30, 2007) (finding allegations of back pain, lack of energy, diarrhea, staph infections, blurry vision, and painful lumps on the arms do not constitute serious medical needs as the conditions only cause discomfort).

Although Plaintiff has demonstrated that he had a serious medical need, he has not pled facts sufficient to establish that Defendants Rodgers and Nunez were deliberately indifferent to his serious medical need.  To establish the requisite deliberate indifference, "the prisoner must prove three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004).  In *Estelle*, the Supreme Court described the boundary between medical malpractice and Section 1983 claims alleging cruel and unusual punishment:

> in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind."  Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  It is

only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Estelle*, 429 U.S. at 105-06.  Thus, on the most general level, deliberate indifference is medical treatment that is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be tolerable to fundamental fairness."  *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).

Plaintiff's first claim is that between September 17, 2007 and September 19, 2007, he received a delay in the treatment of his staph infection.  "'Deliberate indifference' can include 'the delay of treatment for obviously serious conditions where it is apparent that delay would detrimentally exacerbate the medical problem, the delay does seriously exacerbate the medical problems, and the delay is medically unjustified.'"  *Harper v. Lawrence County, Ala.*, 592 F.3d 1227, 1235 (11th Cir. 2010) (quoting *Taylor v. Adams*, 221 F.3d 1254, 1259-60 (11th Cir. 2000)).  The Eleventh Circuit has stated that in cases involving delay in providing medical care, the following factors should be considered: (1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay.  *Goebert v. Lee County*, 510 F.3d 1312, 1327 (11th Cir. 2007) (citations omitted).

The Court finds that Plaintiff has not stated a claim of deliberate indifference.  *See Fischer v. Federal Bureau of Prisons*, 349 F. App'x 372, 374 (11th Cir. 2009) (stating "inadvertence, negligence, or medical malpractice does not rise to the level of deliberate indifference") (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)).  Plaintiff has not alleged that the delay in medical treatment for two days seriously exacerbated or worsened his staph infection.  As noted previously, Plaintiff was unable to communicate his alleged symptoms

8

to Defendants until the morning of September 19, 2007. This delay alone does not suffice to establish deliberate indifference.  Thus, there was no diagnosis of an obviously serious medical condition initially.  Such condition became obvious when Plaintiff exhibited severe symptoms such as cold sweats and fainting.  When that occurred, Plaintiff concedes he was taken to the infirmary and administered medication.  In this regard, Plaintiff attached his medical records to his initial complaint, and the records disclose that Plaintiff received prescriptions for Bactrim, Doxycycline, Hibiclens soap, and Motrin on September 19, 2007 (Doc. No. 1 at 21-22).[4]  Moreover, Plaintiff received a follow-up medical examination on September 26, 2007, at which time the medical staff determined that infection in his knee had healed.  *Id.*  Plaintiff has made no allegation that the delay in receiving treatment worsened his medical condition or that the delay in treatment was attributable to Defendants Rodgers or Nunez.  Thus, Plaintiff has not established a constitutional violation on the part of Defendants.  The Court also notes that Plaintiff has not shown that he suffered from more than de minimis injuries.  *Chatham v. Adcock*, 334 F. App'x 281, 283-84 (11th Cir. 2009) (noting that a prisoner's claims of mental or emotional injury must be accompanied by allegations of physical harm that are greater than de minimis).

Next, Plaintiff alleges Defendant Nunez denied him medication for staph infections that he contracted between December 2007 and October 2008.  Plaintiff also states that he was denied antibacterial soap.  Plaintiff's medical records, attached to his complaint, contradict his allegations. These exhibits are considered to be a part of the pleadings.

---

[4] Bactrim and Doxycycline are antibiotics used to treat bacterial infections, Hibiclens soap is an antimicrobial soap that kills bacteria, and Motrin is a prescription ibuprofen used to relieve pain and swelling.

Fed. R. Civ. Pro. 10(c) (stating that "a written instrument that is an exhibit to a pleading is part of the pleading for all purposes"). Although the Court has a duty to accept Plaintiff's allegations as true at the motion to dismiss stage, this duty does not require a court to ignore documents attached to the complaint that contradict Plaintiff's allegations. *See Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007). When those documents or exhibits contradict the complaint, the exhibits govern. *Id.* (citing *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint. If the appended document, to be treated as a part of the complaint for all purposes under Rule 10(c) . . . reveals facts which foreclose recovery as a matter of law, dismissal is appropriate."[5])); *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (determining that the plaintiff's allegations were not to be credited because they were refuted by the police reports he attached to the complaint); *Morris v. City of Orlando*, case no. 6:10-cv-233-Orl-19GJK, 2010 WL 4646740, at * 5 n.3 (M.D. Fla. Nov. 9, 2010) (resolving any conflict between the plaintiff's allegations and the arrest affidavit attached to the complaint in favor of the arrest affidavit).

The attached documents reflect that on December 24, 2007, Plaintiff was treated for a staph infection on his elbow and received a prescription for Bactrim, Doxycycline, and Hibiclens soap (Doc. No. 1 at 24). On March 28, 2008, Plaintiff was again treated for a

---

[5] Fifth Circuit cases decided prior to October 1, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

staff infection on his left eyebrow and received prescriptions for Bactrim, Doxycycline, and Motrin. *Id.* at 25. Plaintiff then received a fourth treatment for a staph infection on June 17, 2008, in which he received prescriptions for Bactrim and Doxycycline. *Id.* at 37. Further, on July 24, 2008, Plaintiff was treated again for a staph infection and received prescriptions for Bactrim and Doxycycline. *Id.* at 38. Plaintiff has not demonstrated that Defendant Nunez acted with deliberate indifference to his serious medical needs, as Plaintiff was treated with medication, specifically, antibiotics to combat the bacterial infection, each time he contracted a staph infection.

Additionally, Plaintiff complains that he did not receive pain medication or antibacterial soap every time he contracted a staph infection. "[A] simple difference in medical opinion between the prison's medical staff and the inmate" regarding the course of treatment does not state an Eighth Amendment claim for deliberate indifference to medical care. *Smith v. Florida Dep't of Corr.*, 375 F. App'x 905, 910 (11th Cir. 2010) (citing *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991)). The question of "whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore [is] not an appropriate basis for grounding liability under the Eighth Amendment." *Smith*, 375 F. App'x at 910 (citing *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995)). In this claim Plaintiff is essentially disagreeing with the course of treatment prescribed by Defendant Nunez; and thus, he does not state a viable claim of deliberate indifference to medical care.

Finally, Plaintiff alleges that Defendants Rodgers and Nunez knowingly placed inmates into the general Jail population who were infected with the staphylococcus aureus virus. Defendants argue that Plaintiff has failed to state a claim against them as they are

not responsible for housing at the Brevard County Jail (Doc. No. 29 at 2).  The Court agrees.  Defendants Rodgers and Nunez are medical staff at the Jail[6] and not correctional officers or Jail staff who have the authority to make housing decisions.  Plaintiff does not allege Defendants deliberately denied specific inmates of medical care, who then later spread the staph infection to him.  Plaintiff's claim fails as he has not sued the proper parties, those responsible for the housing of inmates.

The Court finds that Plaintiff has failed to state colorable claims for relief against Defendants Rodgers and Nunez.  Accordingly, it is **ORDERED AND ADJUDGED** that Defendant Rodgers and Nunez's Motion to Dismiss (Doc. No. 29) is **GRANTED**.  Defendants Rodgers and Nunez are **DISMISSED** from this action.

**DONE AND ORDERED** in Orlando, Florida, this 23rd  day of February 2011.

Copies to:
pslc 2/23
Joseph Michael Schneider
Counsel of Record

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

---

[6] As the Court noted, *supra*, Defendant Rodgers is a licensed practical nurse and Defendant Nunez is a doctor.

12