**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JOSEPH MICHAEL SCHNEIDER,**

    **Plaintiff,**

v.                                                                                    **CASE NO. 6:09-cv-1089-Orl-35GJK**

**SHERIFF JACK PARKER,** *et al.*,

    **Defendants.**

_____/

## ORDER

Plaintiff initiated this action pursuant to 42 U.S.C. § 1983 (Doc. No. 1). This case is before the Court on Defendant Sheriff Jack Parker's Motion to Dismiss the Second Amended Complaint (Doc. No. 47). Plaintiff has filed a response in opposition (Doc. No. 61).

*I.   Background*

Plaintiff, a prisoner of the State of Florida proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 against Defendants Sheriff Jack Parker, Tammie Rodgers, LPN, and Juan Nunez, M.D. (Doc. No. 13).[1] Plaintiff alleges that on September 4, 2007, he was arrested and taken to the Brevard County Jail ("Jail"), where he was forced to sleep on a mattress on the floor of a day room for almost one week due to overcrowding. *Id.* at 11. Furthermore, Plaintiff notes that from

---

[1] On February 23, 2011, this Court granted Defendant Rodgers' and Nunez's Motion to Dismiss (Doc. No. 51).

September 4, 2007, through October 6, 2007, inmates were forced to eat their meals on the floor as there was not enough seating.  *Id.* at 14.  Plaintiff also contends that approximately 25 to 45 inmates had to share one toilet and 65 to 85 inmates were required to share two showers.  *Id.* at 9.  After his release, Plaintiff was arrested again and detained at the Jail from December 19, 2007, through October 19, 2008, and the conditions of the Jail had not improved. *Id.*

Plaintiff also alleges that from September 17, 2007, through September 19, 2007, he was denied medical care for his staphylococcus aureus infection, more commonly known as a staph infection.  *Id.*  Plaintiff asserts that he experienced pain and inflammation due to the medical staff's refusal to treat his infection.  *Id.* Moreover, Plaintiff notes that he lost sleep on the night of September 18, 2007, due to the pain in his knee.  *Id.* at 12-13.  On September 19, 2007, Plaintiff experienced "cold sweats" due to the extreme pain he was experiencing.  *Id.* at 13.  Additionally, the other inmates "became excited due to the contagiousness of his infection" and demanded that he be removed from the dorm or pod.  *Id.* Plaintiff fainted in the presence of the correctional officer and was then taken to the infirmary, where he was treated for his infection.  *Id.*

While being treated for his infection, Defendant Rodgers advised Plaintiff that staph "was rampant throughout the jail."  *Id.* at 14.  Defendant Rodgers advised Plaintiff that if he wanted to avoid this infection then he should not have come to the Jail.  *Id.*  When Plaintiff was reincarcerated at the Jail from December 2007 through October 2008, he contracted several more staph infections.  *Id.* at 15.  Finally, Plaintiff

contends that from December 19, 2007, through October 19, 2008, Defendant Nunez denied him medication for the swelling from his infection and antibacterial soap to keep his infections clean.  *Id.* at 18.

Plaintiff states that Defendant Parker is responsible for his placement in an overcrowded cell containing unhealthy and unsanitary conditions because he is the Jail supervisor.  *Id.* at 8-9.  Moreover, Plaintiff states that Defendant Parker knew about the conditions of the Jail, the fact that Plaintiff suffered from incessant staph infections, and the fact that correctional officers knowingly placed people who had staph infections into the general population, where they infected others.  *Id.* at 8-9.  Plaintiff also alleges that Defendant Parker is responsible for Defendant Nunez and Rodger's failure to properly care for his medical needs and treat his staph infections.  *Id.* at 9.

## II.    Standard of Review

When considering a motion to dismiss pursuant to Rule 12(b)(6), the complaint is construed in the light most favorable to the plaintiff and its allegations are taken as true. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Development Corporation S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983).  A complaint must contain a short and plain statement demonstrating an entitlement to relief, and the statement must "give the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346 (2005)).

In order to survive a motion to dismiss, a complaint "does not need detailed

factual allegations," but must plead "enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570; *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009); *Randall v. Scott*, 610 F.3d 701, 708 (11th Cir. 2010).  Thus, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."  *Id.*

Dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the factual allegations of the plaintiff's complaint, there remains a dispositive legal issue which precludes relief.  *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *Brown v. Crawford County, Ga.*, 960 F.2d 1002, 1009-10 (11th Cir. 1992).  Moreover, in the case of a *pro se* action, the Court should construe the complaint more liberally than it would pleadings drafted by lawyers.  *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).

### III.  Discussion

Defendant Parker argues that Plaintiff has failed to exhaust his administrative remedies.  Plaintiff notes, in his second amended complaint, that while housed at the Jail he was unaware of the existence of a grievance procedure (Doc. No. 13 at 4).  Plaintiff states that after he was transferred to the Department of Corrections, he learned that he was required to file grievances regarding his claims contained in the instant amended complaint.  *Id.* At that time, Plaintiff sent a handwritten grievance to

4

the Jail but he did not receive a response.  *Id.* at 4-5.[2]

Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust his administrative remedies before pursuing a civil rights action.  Specifically, the statute states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  *Id.*  The United States Supreme Court has held that § 1997e requires "proper exhaustion," meaning that "a prisoner must exhaust all prescribed administrative remedies available to him . . . before filing a lawsuit to seek judicial redress."  *Garcia v. Glover*, 197 F. App'x 866, 868 (11th Cir. 2006) (citing *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)).  The Supreme Court has repeatedly held that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)).  To determine whether plaintiffs have exhausted their administrative remedies, courts do "not review the effectiveness of those remedies, but rather whether remedies were available and exhausted."  *Miller v. Tanner*, 196 F.3d 1190, 1193 (11th Cir. 1999) (citing *Alexander v. Hawk*, 159 F.3d 1321, 1326 (11th Cir. 1998)).

Exhaustion of administrative remedies is properly raised in the instant motion to

---

[2] The Court notes that an untimely administrative grievance does not satisfy the exhaustion requirement of the PLRA.  *Johnson v. Meadows*, 418 F.3d 1152, 1153 (11th Cir. 2005).  Moreover, as Defendant notes, the Jail's inmate grievance procedure may only be utilized by inmates *currently* incarcerated at the Jail (Doc. No. 49 at 2).  Plaintiff is not currently incarcerated at the Jail.

dismiss. *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008) (stating that an exhaustion defense is properly raised in a motion to dismiss and is "not ordinarily the proper subject of a motion for summary judgment.") Because the motion to dismiss is based on an issue not enumerated under Rule 12(b), Federal Rule of Civil Procedure 43(c) governs and "permits courts to hear evidence outside of the record on affidavits submitted by the parties." *Id.* at 1375; *Tillery v. Tran*, No. 6:09-cv-951-Orl-35KRS, 2010 WL 1838062, at *2 (M.D. Fla. May 4, 2010). Accordingly, "'parties may submit documentary evidence concerning the exhaustion issue and doing so will not require the conversion of the motion to dismiss into a summary judgment motion.'" *Tillery*, 2010 WL 1838062, at *2 (quoting *Brown v. Darr*, No. 4:09-cv-130-CDL-GMF, 2010 WL 1416552, at *3 (M.D. Ga. Mar. 3, 2010)); *Bryant*, 530 F.3d at 1377 n. 16. "In addition, the judge may resolve factual questions concerning a plaintiff's alleged failure to exhaust nonjudicial remedies, so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop the record." *Tillery*, 2010 WL 1838062 at *2 (quotation omitted).

To determine whether a complaint should be dismissed for failure to exhaust administrative remedies, the Court must first consider the factual allegations in Defendant's motion to dismiss and those in Plaintiff's response, and if they conflict, the Court must accept, for purposes of the motion, Plaintiff's version of the facts as true. *See Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* (citing *Bryant*, 530 F.3d at 1373-74). If the Court determines that the complaint is not subject to dismissal when considering

6

Plaintiff's factual allegations as true, "the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* The Court notes that the "defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id.* After the Court makes its findings and resolves the disputed issues of fact, "it then decides whether under those findings the prisoner exhausted his available administrative remedies." *Id.*

Defendant argues that Plaintiff failed to follow the Jail's grievance procedure and, thus, has not properly exhausted his administrative remedies. Pursuant to the affidavit of Corporal Roy Foster, Classifications Supervisor at the Jail, the Jail had an established inmate grievance procedure in 2007 and 2008 (Doc. No. 48 at 2). Attached to the affidavit is the grievance procedure that was in effect during both of Plaintiff's periods of incarceration at the Jail (Doc. No. 48-3, Exhibit C). The Jail has a three-step inmate grievance procedure. *Id.* First, an inmate must make an informal grievance with the officer in charge of their housing area. *Id.* Next, an inmate must request a formal grievance form from the officer in charge of the housing area, complete the grievance form, and file it with the floor officer. *Id.* Finally, if an inmate is dissatisfied with the response to the formal grievance, the inmate may appeal the response. *Id.* Grievances regarding health care services are to be filed with the responsible medical personnel at the Jail. *Id.* In 2007 and 2008, there was no distinction between medical grievance forms and regular grievance forms (Doc. No. 48 at 2).

In his motion to dismiss, Defendant argues that Plaintiff did not follow this grievance procedure (Doc. No. 47 at 7). Plaintiff alleges that he was unaware of the

grievance procedure because he never received any information regarding the Jail's grievance procedure (Doc. No. 61 at 1-2).  Defendant attaches the affidavit of Major Hibbs, wherein he attests that every inmate who is processed as part of the Jail's intake receives an inmate handbook (Doc. No. 49 at 2).  Major Hibbs attests that Plaintiff would have received an inmate handbook as a party of the Jail's processing procedure and notes that there is no reason to believe that Plaintiff did not receive an inmate handbook.  *Id.*  Although Plaintiff asserts in his response that he never received an inmate handbook nor was he provided with any Jail orientation that might have informed him of the grievance procedure, this assertion is not sworn or made under the penalties of perjury (Doc. No. 61 at 1-2).[3]  Plaintiff has provided no other evidence demonstrating that he did not receive an inmate handbook and therefore was unaware of the Jail's grievance procedure.  *See McDowell v. Hughes*, No. 1:09-cv-376-WHA, 2011 WL 778404, at *2-3 (M.D. Ala. Feb. 7, 2011) (finding the plaintiff's conclusory and self-serving statement that he filed grievances, without attaching any other documentation or records, did not refute the defendant's evidence that no grievances were in the plaintiff's inmate file, thus indicating the plaintiff had not exhausted the allegations of the complaint).  The Court finds that Defendant has met his burden of offering evidence to show that Plaintiff was placed on notice of the Jail's grievance procedure.

Furthermore, even if the Court accepted Plaintiff's allegations that he never

---

[3] Plaintiff does provide several affidavits of other inmates who attest that they were housed at the Jail from 2005 through the present and never received an inmate handbook, however, these affidavits do not specifically attest that Plaintiff failed to receive an inmate handbook (Doc. No. 61, Exs. A1, A2, & A3).

received an inmate handbook as true, Defendant has also provided evidence that Plaintiff was actually aware of the Jail's grievance procedure and utilized the procedure on several occasions. Specifically, Defendant argues that Plaintiff filed numerous grievances over the course of his several incarcerations at the Jail (Doc. No. 47 at 8). Defendant attaches several grievances that Plaintiff filed with officers at the Jail beginning in August 2005 up to the present day (Doc. No. 48-7). Notably, the records Defendant attached show that Plaintiff filed a hand-written medical grievance on March 31, 2008, arguing that he was denied anti-bacterial soap and band-aids. *Id.* at 3. Plaintiff's claims relate to events in the Jail that occurred between September 2007 and October 2008. The Court finds that this grievance demonstrates that Plaintiff was aware of the Jail's grievance procedure.[4] *See Bryant*, 530 F.3d at 1377-78 (finding the federal district court's factual finding that the plaintiff failed to exhaust his administrative remedies was not clearly erroneous because there was unrebutted evidence that the plaintiff had successfully filed one grievance at the prison, even though it was for

---

[4]Defendant also attaches computer records which indicate that Plaintiff filed grievances on August 24, 2005, August 31, 2005, April 9, 2008, June 19, 2008, September 10, 2008, September 27, 2008, and September 28, 2008 (Doc. No. 48-7). These documents are data entry records entered into the Jail's computer system, which logs the grievance information. *Id.* To the extent Plaintiff argues that these computer-generated grievances are unreliable because they are not the actual handwritten copies of the grievances that he allegedly filed with the Jail (Doc. No. 61 at 3-4), the Court disagrees. The Jail grievance policies instruct that a classification officer, upon receiving an inmate grievance, will assign the grievance a reference number and enter it into the Jail Management System, where the inmate's name, complaint, date of grievance, and an officer's response to the grievance, among other things, are recorded and a computer record of that information is generated (Doc. No. 48-3). The hard copy of the grievance form is then returned to the inmate along with copies of the computer-generated answer to the complaint. *Id.* Thus, the computer-generated grievances attached to the motion to dismiss, which list a reference number, Plaintiff's name, date of grievance, complaint, date answered, and officer's response, also support the finding that Plaintiff was aware of the Jail's grievance procedure between September 2007 and October 2008.

property loss and not the excessive force at issue in the case). Furthermore, although Plaintiff states that he did not receive a response to his grievance, the copy attached to Defendant's motion to dismiss indicates that a Jail official did respond to Plaintiff's concerns.

Notwithstanding Plaintiff's knowledge of the Jail's grievance procedure, he failed to file any informal grievances regarding his complaints about the Jail conditions and the treatment of his staph infections. Moreover, to the extent that his March 31, 2008 grievance properly raised one issue in this case, Plaintiff failed to appeal that grievance. Plaintiff's failure to file informal and formal grievances in accordance with the Jail's grievance procedure renders his claims against Defendant unexhausted. As such, Defendant's motion to dismiss is granted and the amended complaint must be dismissed based on Plaintiff's failure to exhaust his administrative remedies.

Accordingly, it is **ORDERED AND ADJUDGED**:

1. Defendant Jack Parker's Motion to Dismiss (Doc. No. 47) is **GRANTED**. This case is **DISMISSED**.

2. The Clerk of Court is directed to enter judgment and close this case.

**DONE AND ORDERED** in Orlando, Florida, this 9th day of August, 2011.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Copies to:
OrlP-3 8/9, Joseph Michael Schneider, Counsel of Record